**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**



MIDATLANTIC INTERNATIONAL, INC.,
     **Plaintiff,**

v.

                                            **Civil Action No. 2:12cv169**

AGC FLAT GLASS NORTH AMERICA, INC.,
     **Defendant.**

## OPINION AND ORDER

Presently before the Court is Defendant AGC Flat Glass North America, Inc.'s ("Defendant") Motion to Dismiss. Defendant contends that the parties, facts, and claims raised in this suit are presently involved in litigation in a previously filed action in Tennessee state court (the "state court action"),[1] and that this warrants dismissal. Defendant's motion to dismiss rests on two independent grounds: (i) the first-to-file rule and (ii) the doctrine of Colorado River abstention. The matter has been fully briefed and is now ripe for decision. For the reasons stated herein, Defendant's Motion is hereby **GRANTED**.

### I.    Factual and Procedural History

Plaintiff MidAtlantic International Inc. (Plaintiff) is a Barbadian corporation with its principal place of business in St. Michael, Barbados. Compl. ¶ 1. Defendant is a Delaware corporation with its principal place of business in Alpharetta, Georgia. Compl. ¶ 2. Defendant is

---

[1] The state court action is styled *AGC Flat Glass North America, Inc. v. MidAtlantic Minerals, Inc.*, Civ. No. C39577, Law Court for Sullivan County, Tennessee

a manufacturer of glass products. Compl. ¶ 5.   Plaintiff has been a supplier of dolomite, a raw material used in manufacturing flat glass, to Defendant since 1997. Compl. ¶ 5.   According to Plaintiff, all of the dolomite it has supplied to Defendant has been mined from the same quarry in Spain. Compl. ¶ 6.   At Defendant's request, Plaintiff would purchase dolomite in 8,000 to 10,000 ton quantities, import the dolomite from Spain into the United States, and store the dolomite in a warehouse near the port of Norfolk. Compl. ¶ 7.   Defendant would then notify Plaintiff of its monthly needs for dolomite, and Plaintiff would arrange for the shipment of those quantities via rail to Plaintiff's various factories. Compl. ¶ 8. Plaintiff states that Defendant was invoiced and paid for the dolomite as each rail shipment was made.   Compl. ¶ 8.

On January 14, 2008, the parties entered into a contract under which Plaintiff agreed to supply Defendant with Spanish dolomite for the years 2008-2010. Compl. ¶ 9.  According to Plaintiff, this agreement was later extended beyond 2010. Compl. ¶ 10. The agreement included a term which provided that if Defendant stopped buying material "for whatever reason," Defendant would pay Plaintiff "for any dolomite remaining in storage at the warehouse in Norfolk, VA," payment to be made within 30 days from the date of invoice. Compl. ¶ 11. Each of the monthly purchase orders issued by Defendant to Plaintiff contained a similar provision. Compl. ¶ 11.

In June 2011, Plaintiff purchased 8,267.38 short tons of dolomite, transported it to Norfolk, Virginia, and stored it in a warehouse, along with approximately 500 short tons of dolomite still on hand from prior purchases. Compl. ¶ 12. As was its custom, Plaintiff furnished to Defendant a Certificate of Analysis for the June 2011 dolomite shipment.  Compl. ¶ 13. According to Plaintiff, Defendant raised no concerns about the results, nor did it request further testing of the shipment. Compl. ¶ 13.  Between June to September 2011, Defendant purchased

2

and used approximately 1,800 short tons of dolomite from the June 2011 shipment. Compl. ¶ 16. In December 2010, Defendant notified Plaintiff that there was Spinel in the dolomite that exceeded specifications. Compl. ¶ 17. Defendant has since refused to order any additional shipments of dolomite from Plaintiff, and has, according to Plaintiff, refused to pay for the 4,766.313 tons of dolomite remaining in the warehouse near the Port of Norfolk. Compl. ¶ 17.

On March 9, 2012, Defendant filed a Complaint against Plaintiff in the Law Court for Sullivan County, Tennessee, asserting claims for breach of contract and declaratory judgment, and seeking damages for Plaintiff's shipment of non-conforming goods. Three weeks later, on March 30, 2012, Plaintiff filed a Complaint against Defendant in this Court. Defendant now seeks to dismiss the federal case pursuant to the first-to-file rule or, in the alternative, the Colorado River abstention doctrine.

## II.   Discussion

### a.   First to File Rule

Defendant asks the Court to dismiss Plaintiff's Complaint pursuant to the "first to file" rule, which provides that, "[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *Byerson v. Equifax Info. Servs., LLC*, 467 F.Supp. 2d 627, 635 (E.D.Va. 2006). Defendant notes, correctly, that the Fourth Circuit recognizes the "first to file" rule. What Defendant apparently fails to recognize, however, is that this rule is generally applied only where cases involving the same subject matter and same parties are pending in different federal courts. Indeed, every case which Defendant cited in support of its "first to file" argument involves competing litigation in different federal courts. Although many

of the justifications for the "first to file" rule also apply where parallel proceedings are filed in state and federal court, the Court today declines to extend the rule to this situation.

### b. *Colorado River Abstention*

Defendant next contends that the Court should defer to the parallel state litigation under the doctrine announced in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). In *Colorado River*, the Supreme Court recognized a narrow exception to the "virtually unflagging obligation" of federal courts to hear all cases over which they have jurisdiction. *Id.* at 817-18. In order for a federal court to properly abstain under *Colorado River*, two threshold considerations must be present. First, there must be parallel proceedings in state and federal court. *Baseline Sports, Inc. v. Third Base Sports*, 341 F.Supp.2d 605, 608 (E.D.Va. 2004). Second, exceptional circumstances warranting abstention must be present. *Sto Corp. v. Lancaster Homes, Inc.*, 11 Fed. Appx. 182, 186 (4th Cir. 2001).

With respect to the first condition, "[s]uits are parallel if *substantially* the same parties litigate *substantially* the same issues in different forums." *New Beckley Mining Corp. v. Int'l Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir. 1991) (emphasis added). Thus, neither the parties nor the issues need be identical for Colorado River abstention to apply. *Baseline Sports*, 341 F.Supp. 2d at 608. Here, Defendant contends that the state court action and the instant action involve "identical parties, facts, and claims." Mot. Dismiss, p. 7. Plaintiff, on the other hand, states that there is a "plain lack of identity" between the parties because Plaintiff in the federal suit is MidAtlantic International, Inc., a Barbadian corporation, and Defendant in the state court action is MidAtlantic Minerals, Inc., a Canadian corporation.

4

The Court's review of the facts of this case indicates that Plaintiff has mischaracterized the nature of the pending state court action. First, MidAtlantic International, Inc. *is* a party to the state court action. Plaintiff apparently relies on Defendant AGC's failure to name MidAtlantic International, Inc. in the caption of the state court case[2] in an attempt to argue that MidAtlantic Minerals, Inc. is the sole defendant in the state court action. However, in the first paragraph of its Complaint in the state court action, Defendant AGC (Plaintiff in the state court action) names Plaintiff MidAtlantic International, Inc. as a defendant along with MidAtlantic Minerals, Inc. Moreover, the law is well-settled that parties need not be identical for a suit to be considered "parallel" for abstention purposes. Thus, even if MidAtlantic International, Inc. was not a named party in the state court action, MidAtlantic International, Inc. and MidAtlantic Minerals, Inc, are substantially connected business entities, and this is sufficient to satisfy the first prong of the *Colorado River* test for abstention.[3] *See Holland v. Hay*, 840 F.Supp. 1091, 1102 (E.D.Va. 1994). Accordingly, for Plaintiff to argue that there is a "plain lack of identity between the parties" in the federal suit and the state court action defies logic. The first threshold requirement of *Colorado River* is clearly satisfied in this case.

To succeed on its motion, Defendant must next show that exceptional circumstances are present which justify abstention. Indeed, the court's task in determining whether Colorado River abstention applies "is not to find some substantial reason for the *exercise* of federal jurisdiction

---

[2] In the state court action, only MidAtlantic Minerals, Inc. is listed as a defendant in the caption of the case. However, Defendant AGC represents to the Court that it has filed a motion to amend its Complaint in the state court action to include MidAtlantic International, Inc. as a party in the state suit in the caption of the case. The body of the Complaint in the state court action makes clear that Defendant AGC is suing both MidAtlantic entities.

[3] Emails attached as an Exhibit to Defendant AGC's Motion to Dismiss show that the individual communicating with Defendant AGC in Tennessee on behalf of Plaintiff MidAtlantic International is "Dana," the same person who submitted an affidavit in the state court action on behalf of MidAtlantic Minerals, Inc. This individual, Dana Smith, is the President of MidAtlantic Minerals and served as an agent and/or representative of MidAtlantic International, Inc., during its dealings with Defendant AGC in Tennessee. Thus, the parties are clearly intertwined. (Mot. Dismiss, p. 2.)

by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice . . . to justify the *surrender* of that jurisdiction. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983) (emphasis in original). To aid courts in determining whether such exceptional circumstances exist, the Supreme Court has identified seven factors that may be relevant: (i) jurisdiction over the property; (ii) inconvenience of the federal forum; (iii) desirability of avoiding piecemeal litigation; (iv) the order in which jurisdiction is obtained; (v) whether federal law is implicated; (vi) whether the state court proceedings are adequate to protect the parties' rights; and (vii) whether the later-filed lawsuit is reactive or vexatious. *Colorado River*, 424 U.S. at 818; *Moses H. Cone*, 460 U.S. at 17 (adding the consideration of whether the latter suit is vexatious or reactive).

Plaintiff argues that *Colorado River* "provides no warrant for this court to dismiss (or stay) the unexceptional prosecution of the instant claims for breach of contract . . ." Reply to Mot. Dismiss, p. 9. However, in so arguing, Plaintiff mistakenly relies on a narrow reading of the *Colorado River* opinion itself, to the exclusion of *Colorado River*'s progeny. Precedent from this Court and from the Fourth Circuit counsels against Plaintiff's strained interpretation of the Colorado River doctrine.

### 1. *Jurisdiction over Property*

No res or property is involved over which either court has asserted jurisdiction. Therefore, this factor is inapplicable. *Baseline Sports*, 341 F.Supp.2d at 609.

### 2. *Inconvenience of the Federal Forum*

"In considering whether the federal or state forum is inconvenient, the court must look at the 'relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining the attendance of willing witnesses." *Baseline Sports*, 341 F.Supp.2d at 610 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). Defendant contends – and Plaintiff, apparently, does not dispute – that most of the records and witnesses involved in this litigation are located in Sullivan County, Tennessee, the locus of the state court action. Mot. Dismiss, p. 7. Defendant's manufacturing facility and records are located in Sullivan County, Tennessee; the goods at issue were shipped to Sullivan County, Tennessee; Defendant's employees who received the goods reside in or near Sullivan County, Tennessee; the goods at issue were tested in Sullivan County, Tennessee; and Dana Smith, the President of MidAtlantic Minerals, Inc., dealt, communicated, and negotiated with Defendant's employees in Sullivan County, Tennessee. Nonetheless, Plaintiff argues that the federal forum is sufficiently convenient because the agreement was performed in Virginia, Defendant AGC is authorized by the Virginia Corporation Commission to do business in Virginia, and Defendant AGC has appointed an agent in Virginia to receive service of process.

That Defendant has some contacts to the state of Virginia is clearly insufficient to outweigh the convenience of trying a case in the jurisdiction in which nearly all of the records and witnesses are located. According to Defendant, "the materials at issue were not intended to be used in the Eastern District of Virginia, and are not located in this district now." Def.'s Am. Reply Br. Support Mot. Dismiss, p. 9. As the great majority of records, evidence, and witnesses pertaining to this case are located in or near Sullivan County, the Court concludes that Tennessee is the more convenient forum. Accordingly, this factor weighs in favor of abstention. *Baseline Sports*, 341 F.Supp.2d at 610

3. *Order in which Jurisdiction was Obtained*

Defendant AGC filed the state court action on March 9, 2012. Three weeks later, on March 30, 2012, Plaintiff filed the instant suit. It is undisputed that the state court obtained jurisdiction over this matter before the federal lawsuit was filed. Priority of jurisdiction, however, is not "measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21. It appears to this Court that no progress has been made in the state court action beyond the filing and service of the Complaint. Therefore, this factor is neutral.

4. *Avoidance of Piecemeal Litigation*

This Court has previously counseled that "[t]he existence of parallel (in fact, nearly identical) state and federal proceedings is wasteful of judicial resources." *Baseline Sports*, 341 F.Supp.2d at 610. This is particularly so where the duplicative litigation is the product of a reactive, vexatious lawsuit. *Id.* Here, the two suits involve the same or substantially similar parties, facts, and issues. This will no doubt pose serious *res judicata* problems depending on which court first reaches the merits of the case. Therefore, this factor weighs in favor of abstention.

5. *Presence or Absence of a Federal Question*

This case is governed entirely by state law. All claims arise under state law, and there is no federal issue present in the case. As the absence of a federal question does not counsel in favor of abstention, this factor is neutral.

6. *Adequacy of the State Court Proceedings to Protect Parties' Rights*

Considering that there is no federal question in this case, the Court sees no reason why the parties' rights and interests cannot be adequately protected in the state court action. Therefore, this factor does not counsel against abstention.

### 7.  *Reactive or Vexatious Nature of the Federal Suit*

Plaintiff has offered no reason why this case should be tried in federal court rather than, or in addition to, state court.  The case involves only questions of state law, most of the witnesses and records are located in Sullivan County, Tennessee, and all of the issues raised in the federal action were also raised in the state court action.  Although Plaintiff is not required to justify its decision to file the federal action, the timing of the second suit, combined with Plaintiff's failure to provide any justification – particularly in the face of a motion to dismiss – suggests that Plaintiff's motivation for bringing this duplicative action was reactive.  Indeed, in its Reply to Defendant's Motion to Dismiss, Plaintiff does not even attempt to explain why it waited until after Defendant AGC had filed the state court action to file the federal suit or, indeed, why it filed suit at all when the claims at issue were already pending in state court.  *See Baseline Sports*, 341 F.Supp.2d at 612 (considering that plaintiff had pointed to no valid reason for the existence of the federal suit).  Instead, Plaintiff argues that the Court should not give any consideration to whether the second suit is reactionary or vexatious, because the relevant language in *Moses H. Cone* was dicta, rather than binding precedent.  While this may be true, numerous courts, including the Fourth Circuit and this Court, have expressly recognized that the motivation behind the filing of the second suit is a relevant factor in the abstention inquiry.  *See Holland v. Hay*, 840 F.Supp. 1091, 1102 (E.D.Va. 1994) (citing *McLaughlin v. United Va. Bank*, 955 F.2d 930, 934-35 (4th Cir. 1992)).  Given that Plaintiff filed the federal suit almost immediately after being served with Defendant AGC's Complaint in the state court action, and considering Plaintiff's

failure to offer any explanation as to why the second suit was filed, the Court finds that the instant action is of a reactive and vexatious nature. This is an exceptional factor which weighs heavily in favor of, and provides substantial justification for, abstention. Thus, "a stay or dismissal is warranted as a means to deter vexatious use of the courts." *Holland*, 840 F.Supp.2d at 1102.

## III.   Conclusion

In *Baseline Sports*, this Court held that "[t]he reactive and vexatious nature of this lawsuit is by itself an exceptional circumstance which, coupled with the court's finding that the state and federal proceedings are parallel, justifies abstention under *Colorado River*." 341 F.Supp.2d at 612. So too here. Moreover, numerous factors, including the inconvenience of the federal forum, the need to avoid piecemeal litigation, and the lack of a federal question counsel in favor of abstention. No factor counsels against abstention. Thus, after careful consideration of the factors discussed above, and taking into account the strong presumption in favor of exercising jurisdiction, the Court finds that exceptional circumstances exist in this case which counsel in favor of abstention. "Practically speaking, this conclusion means the case must be dismissed." *Id.* (citing *Holland*, 840 F.Supp. at 1102).   Accordingly, Defendant's Motion is hereby **GRANTED** and this case is dismissed without prejudice.

The Clerk is **DIRECTED** to send a copy of this Order to all Counsel of Record.

It is so **ORDERED.**

Norfolk, Virginia

June __7__, 2012

/s/
Robert G. Doumar
Senior United States District Judge